# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

VALERIE LYDIA LOPEZ,

    Plaintiff,

    v.

FRANK BISIGNANO,
Commissioner of Social Security,

    Defendant.

_____/

Case No. 1:25-cv-01358-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I.    INTRODUCTION

Plaintiff Valerie Lydia Lopez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.    FACTUAL BACKGROUND

On January 26, 2022, Plaintiff protectively applied for SSI payments, alleging she became disabled on January 1, 2012, due to fibromyalgia; neuropathy; severe anxiety; bipolar disorder; hand and leg tremors; borderline personality disorder; syncope causing dizziness and falls; migraines; and major depressive disorder. (Administrative Record ("AR") 17, 171, 193, 324–31, 355–57, 361,

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 10.)

386.)                                                                                    Plaintiff amended her alleged onset date to January 26, 2022.  (AR 41–42, 435.)

Plaintiff was born in 1982 and was 39 years old on the application date.  (AR 28, 170, 192, 357, 386, 401.)  Plaintiff graduated high school and has no past relevant work.  (AR 28–29, 362.)

**A.      Relevant Evidence of Record[2]**

**1.      Medical Evidence**

In January 2024, Plaintiff presented for an appointment to treat her major depressive disorder with psychotic features and post-traumatic stress disorder (PTSD).  (AR 858–66.)  She reported that she had been "doing great," with good mood, good sleep, and good appetite.  (AR 858.)  On mental status examination, Plaintiff reported that she "pays attention" to daily activities, and she presented as cooperative, with coherent thought process, fair judgment, intact cognition, and no psychomotor disturbance or hallucinations.  (AR 859.)  She was advised to continue her medications and to regularly follow up with her therapist.  (AR 859.)

Plaintiff complained of bilateral knee and arm pain in May 2024.  (AR 816–21.)  She reported "sudden onset shaking in both hands and arms" that was progressing over the past week, causing her to drop objects.  (AR 816.)  She also reported "increasing knee pain" with frequent "near falls" due to instability.  (AR 816.)  Plaintiff's physical examination showed pain with motion in both knees, normal gait and stance, normal joint examination, and no wrist, elbow, or shoulder pain elicited by motion.  (AR 819–20.)  Plaintiff was assessed with degenerative disc disease, lumbar; fibromyalgia; pain in both knees; and coarse tremors, and her treatment plan included referral for knee injections and neurology consultation.  (AR 821.)

In August 2024, Plaintiff presented for a follow up appointment to treat her major depressive disorder with psychotic features and PTSD.  (AR 868–76.)  She again reported that she had been "doing great," with good mood, good sleep, and good appetite.  Plaintiff also endorsed tiredness, and a sleep study was recommended.  (AR 868.)  Her mental status examination was normal, as before.  (AR 869.)  Plaintiff was advised to continue her medications and to regularly follow up with

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

her therapist.  (AR 869.)

### 2. Opinion Evidence

In April 2022, K. Mohan, M.D., a State agency medical consultant, found Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk about six hours total, and sit for about six hours total in an eight-hour workday.  (AR 181–82). Dr. Mohan further found Plaintiff can use an assistive device "as needed, but it is not medically necessary for ambulation [or] balance.  (AR 182.)  Dr. Mohan also opined that Plaintiff can frequently balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, and that she can occasionally climb ladders, ropes, or scaffolds.  (AR 183–83.)  Bert Spetzler, MD, another State agency medical consultant, adopted Dr. Mohan's findings in December 2022.  (AR 202–205.)

Also in April 2022, Hillary Weiss, Ph.D., a state-agency consultant, found Plaintiff can "sustain simple [and] some detailed tasks [without] undue [symptom] interference" (AR 185) and she can "interact appropriately but may benefit from reduced public contact" (AR 186).  H. Amado, M.D., another State agency consultant, found in November 2022 that Plaintiff is "able to learn and retain simple instructions that are clear, precise, and well-explained" (AR 206) and she can "sustain simple tasks [without] undue [symptom] interference" (AR 207).  Dr. Amado further found that Plaintiff "can interact appropriately but may benefit from reduced public contact" and she is "able to adapt to routine changes in the prospective work setting, and to care for herself."  (AR 208.)

### B. Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on April 27, 2022, and again on reconsideration on December 2, 2022.  (AR 17, 214–18, 229–35.)  Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 236–51.)

At the hearing on August 23, 2024, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions.  (AR 41–55.)  A Vocational Expert ("VE") also testified at the hearing.  (AR 56–63.)

### C. The ALJ's Decision

In decision dated September 26, 2024, the ALJ concluded that Plaintiff was not disabled.

(AR 17–30.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 20–30.)  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since January 26, 2022, the application date (step one).  (AR 20.)  At step two, the ALJ found Plaintiff's following impairments to be severe: right knee medial meniscus contusion; polyneuropathy; type 2 diabetes mellitus; morbid obesity; major depression with psychosis; bipolar disorders; an anxiety disorder; and posttraumatic stress disorder.  (AR 20–21.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 22–23.)

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[3] and applied the assessment at steps four and five.  *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 416.967(b) except she can frequently climb ramps and stairs, and she can occasionally climb ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl and she can have occasional exposure to workplace hazards, such as moving machinery and unprotected heights.  In addition, [Plaintiff] can understand, remember, and carry out simple instructions, and she can occasionally interact with supervisors, coworkers, and the public.

(AR 23–28.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record."  (AR 28.)

The ALJ determined that Plaintiff had no past relevant work (step four) but, given her RFC, she could perform a significant number of jobs in the national economy (step five), including housekeeping cleaner, cafeteria attendant, and routing clerk.  (AR 28–29.)  The ALJ ultimately

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours per day, for 5 days per week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

4

concluded that Plaintiff was not disabled since January 26, 2022, the date the application was filed. (AR 30.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on August 13, 2025.  (AR 1–6.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 416.1481.

### III.    LEGAL STANDARD

**A.    Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy.  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants).  "If a claimant is found to be

5

'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.      Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends that the that the RFC was not supported by substantial evidence because the ALJ independently interpreted medical records without the aid of a medical expert rather than further developing the record.  (Doc. 14.)   The Commissioner responds that the record was adequately developed and the ALJ's RFC assessment was proper.  (Doc. 16.)  The Court agrees with the Commissioner and will affirm the ALJ's decision.

### A.   Legal Standard

An RFC "is the most [one] can still do despite [their] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 416.945(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). An ALJ's RFC determination need not precisely reflect any particular medical provider's assessment. *See Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

In making the RFC determination, the ALJ considers those limitations for which there is record support that does not depend on properly rejected evidence and subjective complaints.  *See Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004).  "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  *Ford,* 950 F.3d at 1156; *Mayes v. Massanari*, 276

F.3d 453, 459-60 (9th Cir. 2001).  A reviewing court "will affirm the ALJ's determination of [a claimant's] RFC if the ALJ applied the proper legal standard and [their] decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

**B.    Analysis**

Plaintiff has not demonstrated that the ALJ improperly interpreted medical evidence and was required to develop the record instead.  As set forth above, State agency physician Dr. Amado reviewed Plaintiff's medical file in November 2022 and found she is able to "learn and retain simple instructions that are clear, precise, and well-explained," can "sustain simple tasks [without] undue [symptom] interference," can "interact appropriately but may benefit from reduced public contact," and is able to "adapt to routine changes in the prospective work setting, and to care for herself." (AR 206–208.)  The ALJ concluded this opinion was only "somewhat persuasive," because the language used therein was "not vocationally defined, and thus, [did] not adequately articulate the limitation for use in a residual functional capacity assessment."  (AR 27.)  The ALJ explained that they "translated [Dr. Amado's] assessed limitations into policy compliant and vocationally defined language."  (AR 28.)

Plaintiff does not challenge the persuasiveness accorded by the ALJ to Dr. Amado's opinion. Instead, she contends that the ALJ's "translation" of the opined limitations was an improper interpretation of lay evidence.     (Doc.    14    at    11.)      This    is    incorrect. Although ALJs do not have unbridled discretion to do so, an ALJ is almost always tasked with performing some independent review of medical evidence and translating the same into functional terms.  This is consistent with the ALJ's role as characterized by the Ninth Circuit.  *See Rounds v. Comm'r of Soc. Sec.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC.").  *See also Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022) ("ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work.").  There is therefore nothing erroneous about the ALJ's translation of Dr. Amado's opined limitations into more vocationally relevant terms.  This is precisely what the ALJ was tasked to do.

Plaintiff next asserts that her health "changed significantly" after the opinions of the State agency physicians, necessitating "guidance from a health care professional."[4] (Doc. 14 at 11–12 (citing AR 816–21, 858–59, 868–69).) She does not, however, explain how the records she cites indicate a worsening of her existing condition or the emergence of new impairments.[5] *See Smith v. Saul*, No. 1:19-CV-01085-SKO, 2020 WL 6305830, at *8 (E.D. Cal. Oct. 28, 2020) (finding ALJ had no duty to develop record because "[n]one of these [additional] records establish the existence of any new condition not assessed by the ALJ, or show a worsening of Plaintiff's existing conditions."); *Hernandez v. Saul*, No. 1:19-CV-01298-GSA, 2020 WL 6700224, at *8 (E.D. Cal. Nov. 13, 2020) (same). The ALJ considered these records (AR 25, 27) and other evidence post-dating the State agency opinions, as well as Plaintiff's statements that she helped her brother take care of his disabled daughter (AR 26 (citing AR 604)). The ALJ was entitled to review and interpret this evidence. *See Razaqi v. Kijakazi,* No. 1:20-cv-01705-GSA, 2022 WL 1460204, at *7 (E.D. Cal. May 9, 2022) ("[A]n ALJ is almost always tasked with performing some independent review [of] the medical evidence that was never considered by one of the state agency's [ ] physicians, and thereafter translating the same into an RFC ... this is indeed the ALJ's role."); *Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) (finding argument that the ALJ was improperly attempting to "play doctor" lacked merit where the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC."). *See also de Hoog v. Comm'r of Soc. Sec.*, No. 2:13–CV–0235–KJN, 2014 WL 3687499, at *7 (E.D. Cal. July 23, 2014) (explaining that "[i]n virtually every case further evidence is received after the [S]tate agency physicians render their assessments—sometimes additional evidence and records are even received after the ALJ hearing. For that very reason, the

---

[4] Plaintiff suggests that the ALJ conceded in the decision that Plaintiff's health had "changed." (Doc. 14 at 13 (citing AR 18).) A review of the decision, however, demonstrates that the ALJ's finding that "circumstances have changed" was made in relation to whether Plaintiff had overcome the presumption of continuing nondisability in view of the prior final agency decision finding Plaintiff not disabled—not in relation to whether a change in Plaintiff's condition had created an evidentiary ambiguity or insufficiency. (*See* AR 18 (citing *Chavez v. Bowen*, 844 F.2d 691, 693–64 (9th Cir. 1988) and Social Security Acquiescence Ruling 97–4(9)).)

[5] S*ee, e.g.*, AR 816, 819–20 (documenting complaints of bilateral knee and arm pain; and showing pain with motion in both knees, normal gait and stance, normal joint examination, and no wrist, elbow, or shoulder pain elicited by motion); AR 858–59, 868–69 (reporting that Plaintiff had been "doing great," with good mood, good sleep, and good appetite, and that she "pays attention" to daily activities; and presenting as cooperative, with coherent thought process, fair judgment, intact cognition, and no psychomotor disturbance or hallucinations).

ALJ is tasked with considering the evidence in the record as a whole.”).

Moreover, Plaintiff does not specify what additional functional limitations in the evidence that she directs the Court to review were not accounted for in the ALJ’s RFC assessment. *See Lamas v. Saul*, No. 1:19-cv-00852-BAM, 2020 WL 6561306, at *9 (E.D. Cal. Nov. 9, 2020) (holding that although ALJ erred in evaluating a claimant’s RFC without support from a medical opinion, such error was harmless where the ALJ found more stringent limitations than any medical opinion).  Nor does she otherwise show any inconsistency between this evidence and her RFC.[6]  *See Perry v. Saul*, No. 2:21-CV-00480-EJY, 2022 WL 959160, at *9 (D. Nev. Mar. 29, 2022) (“Nothing in the record, including Plaintiff's recent scans, is obviously inconsistent with the RFC, the calculation of which is the exclusive domain of the ALJ, and must be respected under the deferential substantial evidence standard.”); *see also Carbajal v. O'Malley*, No. 1:23-CV-00319-BAM, 2024 WL 382375, at *6 (E.D. Cal. Feb. 1, 2024) (“While Plaintiff argues that the ALJ improperly interpreted the medical evidence [post-dating the state agency physicians’ opinions], Plaintiff does not identify what additional functional limitations the ALJ failed to account for in the RFC assessment.  The cited medical records do not establish the existence of any new condition not considered by the ALJ, nor are they apparently inconsistent with the RFC.”) (internal citations omitted).

The legal authority on which Plaintiff relies is inapposite.  (*See* Doc. 14 at 12.)  For example, in *Mack v. Saul*, No. 1:18-cv-01287-DAD-BAM, 2020 WL 2731032 (E.D. Cal. May 26, 2020), the ALJ considered evidence subsequent to a medical opinion, made an independent evaluation of the diagnosed impairments on plaintiff’s ability to work on a function-by-function basis based on that subsequent evidence, and found the effects of any such impairments negligible. *See id*. at *2.  Here, instead of “negligible” impairments, the ALJ ultimately formulated an RFC that included more restrictive limitations than those opined by the State agency medical consultants to account for limitations in postural abilities, hazard exposure, and the areas of understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing oneself (*see* AR 25–26, 27–28). *See Marin v. Comm'r of Soc. Sec.*, No. 1:24-

---

[6] To the extent Plaintiff is advocating for an alternative interpretation of this evidence, it is not within the province of the Court to second-guess the ALJ’s reasonable interpretation, even if such evidence could give rise to inferences more favorable to her.  *See Molina*, 674 F.3d at 1110.

CV-00055-SAB, 2024 WL 3845357, at *8 (E.D. Cal. Aug. 16, 2024) ("Unlike . . . *Mack*, the ALJ here did not interpret raw medical evidence to find Plaintiff less limited than opined by medical providers but considered the lack of objective mental findings in the mental health records and Plaintiff's testimony regarding her symptoms to find her more limited than the State agency physicians opined.").

*Cortez v. Colvin*, Case No. 1:15-cv-00102-EPG, 2016 WL 3541450 (E.D. Cal. June 24, 2016), is likewise distinguishable. In that case, the ALJ interpreted raw medical evidence to reach conclusions as to mental impairments, particularly as to improvement in the plaintiff's symptoms when taking his medication. *Id*. at *5. The *Cortez* court noted an "absence in the record indicating the degree to which [p]laintiff's mental impairments affected him, and what, if any, [p]laintiff's medications had on his ability to work." *Id*. at *6.

In contrast, here Plaintiff has not demonstrated that there was any "absence in the record" to allow for proper evaluation. *See Albrecht v. Astrue*, No. 1:11-cv-01319 GSA, 2012 WL 3704798, at *12 (E.D. Cal. Aug. 27, 2012) (Consultative examination regarding Plaintiff's impairments "not necessary" where the existing evidence was sufficient to support the ALJ's determination and such an exam was not needed to resolve an inconsistency). *See also Marin*, 2024 WL 3845357, at *8; *Ann M. v. Berryhill*, No. 5:18-CV-01080-KES, 2019 WL 1171160, at *6 (C.D. Cal. Mar. 12, 2019) ("Contrary to the cases cited by Plaintiff, the records in this case provided the ALJ with ample support for his RFC, which was based not on raw data but on treatment notes, which included Plaintiff's subjective complaints, observations by physicians, and the treatment plans.") (internal quotation marks omitted) (distinguishing *Cortez*)). Unlike *Cortez*, the ALJ here found the State agency medical consultants' opinions "generally persuasive" (AR 25), "mostly persuasive" (AR 27), and "somewhat persuasive," findings Plaintiff does not challenge, and properly assessed Plaintiff's RFC based on those opinions and the "entire record" (AR 23); *see Bayliss*, 427 F.3d at 1217. The ALJ summarized this record evidence spanning 2021 through 2024 and found, with the support of that record, that Plaintiff had not established she was disabled. (AR 24–28.) The record, kept open for an additional 24 days after the hearing at Plaintiff's request (AR 17, 39, 441), contained Plaintiff's complete treatment records—as counsel conceded (AR 17, 1018)—that supported the

ALJ's findings, and no "gaps" or inconsistencies were noted. *See Findley v. Saul*, No. 1:18-CV-00341-BAM, 2019 WL 4072364, at *6 (E.D. Cal. Aug. 29, 2019) (finding the ALJ was not obligated to further develop the record where counsel stated at the hearing that the record was complete). *See also Randolph v. Saul*, 2:18-cv-00555-CLB, 2020 WL 504667, at *8 (D. Nev. Jan. 31, 2020) (same). Notably, Plaintiff failed to submit any medical opinions as to her ability to work or her functional limitations related to her impairments. Because it is Plaintiff's burden to present evidence of disability, the mere absence of a report from a treating or examining physician does not give rise to a duty to develop the record; instead, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss*, 427 F.3d at 1217; *Alvarez v. Astrue*, No. 1:08-cv-01205-SMS, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the State agency physicians and plaintiff's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 416.912 ("In general, you have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled.").

In the absence of any inadequacy or ambiguity in the record, which Plaintiff has not shown, the Court concludes that the ALJ had no duty to develop it further and did not err in formulating the RFC.

## V.    CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **June 26, 2026**                    /s/ *Sheila K. Oberto*
                                                      UNITED STATES MAGISTRATE JUDGE